RONALD SATISH EMRIT,

     Plaintiff,

     v.

LYCOMING HOUSING
AUTHORITY, et al.,

     Defendants.

CIVIL ACTION NO. 4:16-cv-02022

(BRANN, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, Ronald Satish Emrit, initiated this federal civil action by filing a complaint on October 5, 2016. (Doc. 1). The two named defendants in this action, Lycoming Housing Authority ("LHA") and U.S. Department of Housing and Urban Development ("HUD"), have separately moved for dismissal of the complaint. (Doc. 9; Doc. 15; *see also* Doc. 12; Doc. 16). The plaintiff has failed to file any response whatsoever to the motions to dismiss. The motions are now ripe for disposition.

## I. BACKGROUND

This is one of several substantively identical lawsuits filed by this plaintiff against HUD and various local public housing agencies. *See Emrit v. City of Tucson Hous. Auth.*, Case No. 4:16-cv-00655-RCC (D. Ariz. filed

Oct. 3, 2016) (Doc. 16-3); *Emrit v. Arcadia Hous. Auth.*, Case No. 5:16-cv-00599-CRM-PRL (M.D. Fla. filed Oct. 3, 2016) (Doc. 16-1); *Emrit v. S. Nev. Reg'l Hous. Auth.*, Case No. 2:16-cv-02071-MMD-VCF (D. Nev. filed Oct. 4, 2016) (Doc. 16-5);[1] *Emrit v. Marion Cty. Hous. Auth.*, Case No. 3:16-cv-01854-BR (D. Or. filed Sept. 20, 2016); *Emrit v. Providence Hous. Auth.*, Case No. 4:16-cv-00543-S-LDA (D.R.I. filed Oct. 3, 2016) (Doc. 16-2)). Each of these other cases has been dismissed. *See Emrit v. City of Tucson Hous. Auth.*, No. CV-16-0065-TUC-RCC (D. Ariz. dismissed Apr. 18, 2017); *Emrit v. Arcadia Hous. Auth.*, Case No. 5:16-cv-599-Oc-41PRL (M.D. Fla. dismissed Apr. 24, 2017); *Emrit v. S. Nev. Reg'l Hous. Auth.*, Case No. 2:16-cv-2701-MMD-VCF, 2016 WL 7743037 (D. Nev. Dec. 5, 2016) (report and recommendation), *adopted by* 2017 WL 126113 (D. Nev. Jan. 12, 2017); *Emrit v. Marion Cty. Hous. Auth.*, No. 3:16-CV-01854-BR, 2017 WL 743882 (D. Or. Feb. 23, 2017); *Emrit v. Providence Hous. Auth.*, C.A. No. 16-543S, 2016 WL 7638117 (D.R.I. Oct. 25, 2016) (report and recommendation) (Doc. 12-2), *adopted by* 2017 WL 52572 (D.R.I. Jan. 4,

---

[1] In an apparent effort to circumvent a vexatious litigant injunction previously issued against this plaintiff by the United States District Court for the District of Nevada, the Nevada lawsuit was originally filed in the District of Columbia. It was later transferred to the District of Nevada.

2017), *appeal filed*, No. 17-1110 (1st Cir. Jan. 30, 2017).

By way of background, we adopt the following summary provided by one of those courts:

> The Section 8 Housing Choice Voucher Program is a Federal Government program for assisting low-income families in obtaining affordable housing. Participants choose housing that meets the requirements of the Program. Housing Choice Vouchers are administered locally by Public Housing Agencies ("PHAs"). The PHAs receive federal funding from the United States Department of Housing and Urban Development ("HUD") to administer the Voucher Program. Once housing is chosen, contracts are signed between the PHA and the landlord and the landlord and the tenant. The tenant pays a percentage of his or her monthly income to the landlord towards the contract rent, and the PHA pays the difference. Demand for Vouchers exceeds their supply, and often long waiting lists develop. Under HUD regulations, a [PHA] may admit an applicant with certain characteristics as a special admission from the waiting list. This is discretionary with the housing authority, and an applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs.

*Providence Hous. Auth.*, 2016 WL 7638117, at * 2 (citations, internal quotation marks, and brackets omitted).

In his complaint, Emrit alleges that he has applied for the Section 8 housing voucher program administered by LHA and was placed on a waiting list. He claims that he is entitled to, and has been denied,

preferential treatment due to his mental disabilities, which include bipolar disorder / manic depression, schizoaffective disorder, obsessive compulsive disorder, and post-traumatic stress disorder.

Emrit has alleged the following causes of action against both defendants: (1) negligence; (2) violation of the equal protection clause; (3) violation of the due process clause; (4) violation of the privileges and immunities clause; (5) violation of Section 810 of the Housing and Community Development Act of 1974, 12 U.S.C. § 1706e; (6) violation of the Housing Act of 1937; (7) violation of the Americans with Disabilities Act; (8) violation of the Fair Housing Act; (9) intentional infliction of emotional distress; and (10) breach of contract. Each cause of action is constructed in nearly identical fashion—Emrit recites the applicable law and concludes with a statement such as: (1) "the defendants have violated [the applicable law] by failing to make accommodations for the plaintiff's disabilities which would require that the plaintiff be treated as a priority with regards to Section 8 housing" and (2) "access to housing should be considered to be an implied fundamental right." Few facts are alleged.

The two defendants have separately moved to dismiss the complaint for failure to state a claim, and HUD has moved in the alternative to

dismiss the complaint for lack of subject matter jurisdiction.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Dismissal Standard

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant

has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

## B. Rule 12(b)(6) Dismissal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*,

719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8) (brackets in original).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*
*Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

### A. U.S. Department of Housing and Urban Development

HUD has moved to dismiss the complaint for lack of subject matter
jurisdiction, arguing that Emrit's claims against the agency are barred by
the doctrine of sovereign immunity.

As the Third Circuit has summarized:

> Under the doctrine of sovereign immunity, the United
> States "is immune from suit save as it consents to be
> sued . . . and the terms of its consent to be sued in any
> court define that court's jurisdiction to entertain the
> suit." "A waiver of the Federal Government's sovereign
> immunity must be unequivocally expressed in statutory
> text, and will not be implied."

*Cooper v. Comm'r*, 718 F.3d 216, 220 (3d Cir. 2013) (quoting *United States*
*v. Testan*, 424 U.S. 392, 399 (1976), and *Lane v. Pena*, 518 U.S. 187, 192
(1996)) (citations omitted).

HUD notes that it has not waived sovereign immunity with respect
to the claims asserted against HUD in this action, and Emrit identifies no
statutory basis for waiver of sovereign immunity to contradict this

representation by the Government.[2] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see also Danihel v. Office of President of U.S.*, 616 Fed. App'x 467, 470 n.2 (3d Cir. 2015) (per curiam) (addressing claims against HUD).

Accordingly, it is recommended that all claims against HUD be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## B. Lycoming County Housing Authority

In his complaint, Emrit alleges that he has applied for the Section 8

---

[2] Indeed, he has failed to respond to HUD's motion to dismiss at all. To the extent that Emrit has asserted state-law tort claims against HUD, we note that, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, the United States has waived sovereign immunity against persons suing the federal government for the commission of various torts. *See United States v. Muniz*, 374 U.S. 150, 150 (1963); *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). But HUD is not a proper defendant to an FTCA claim. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA"); *Boyd v. United States*, 482 F. Supp. 1126, 1128 (W.D. Pa. 1980) ("Only the United States Government itself is amenable to suit under [the FTCA]. Employees and specific government agencies are not proper defendants."). Moreover, the complaint has failed to allege that Emrit exhausted administrative remedies prior to initiating this action by filing an administrative claim with HUD, a jurisdictional prerequisite to an FTCA claim. *See* 28 U.S.C. § 2675(a); *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994).

housing voucher program administered by LHA and was placed on a waiting list. He does not allege that he was denied a voucher by reason of his disability. Rather, he claims that he was placed on the waiting list for a voucher in the same manner as any other applicant. What he seeks is preferential treatment—being moved to the top of the waiting list ahead of any other applicants—due to his various disabilities.

### 1. Equal Protection Claim

Emrit claims that LHA's failure to grant him preferential treatment has violated his equal protection rights.

The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). For several reasons, we find that Emrit

has failed to state an equal protection claim.

First, Emrit has not alleged his membership in a suspect class. *See Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 199 (3d Cir. 2000) ("[T]he mentally disabled are neither a suspect nor a quasi-suspect class."); *Kokinda v. Pa. Dep't of Corrs.*, Civil Action No. 2;16-cv-0005, 2016 WL 7029385, at *8 (W.D. Pa. Oct. 31, 2016) (collecting cases finding that mentally ill persons, including sufferers of obsessive-compulsive disorder, are not a suspect class); *Small v. Warren*, Civil Action No. 15-8886 (AET), 2016 WL 2770810, at *4 (D.N.J. May 13, 2016) ("[T]he disabled are not a suspect class for purposes of an equal protection challenge . . . .").

Second, despite his subjective belief that "access to subsidized housing should be considered to be an implied fundamental right," it is well-settled that subsidized low-income housing is not a fundamental right. *See Burney v. Hous. Auth. of Cty. of Beaver*, 551 F. Supp. 746, 755 (W.D Pa. 1982); *see also Acevedo v. Nassau Cty.*, 500 F.2d 1078, 1080–81 (2d Cir. 1974) ("Appellees have no constitutional or statutory duty to provide low income housing. There is no 'constitutional guarantee of access to dwellings of a particular quality.'"); *Grant v. City of Chicago*, 594 F. Supp. 1441, 1450–51 (N.D. Ill. 1984) ("[T]he right[] to . . . public

housing . . . [is] not fundamental."); *Schmidt v. Boston Hous. Auth.*, 505 F. Supp. 988, 996 (D. Mass. 1981) ("[T]here is no federally protected right to low income public housing.").

Third, Emrit has failed to allege that he was treated differently from similarly situated others, or that this differential treatment was not rationally related to a legitimate state interest.[3] *See Burrell v. Loungo*, Civil Action No. 3:14-cv-01891, 2016 WL 7177549, at *10 (M.D Pa. July 18, 2016).

Finally, Emrit has failed to allege any plausible facts that he was denied a housing voucher or denied a request to be placed at the head of the waiting list *because of* his disability. *See Providence Hous. Auth.*, 2016 WL 7638117, at *3; *Burrell*, 2016 WL 7177549, at *10.

Accordingly, it is recommended that Emrit's § 1983 equal protection claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[3] Indeed, as noted above, Emrit's complaint is that he is *not* being treated differently than similarly situated others. He argues that his disabilities merit preferential treatment, advancing him to the front of the line for a Section 8 housing voucher.

## 2. Due Process Claim

Emrit claims that LHA's failure to grant him preferential treatment has violated his due process rights.

Although courts within the Third Circuit have accorded procedural due process protection to applicants for Section 8 housing vouchers, *see Everett v. Hous. Auth. of City of Shamokin*, 2014 WL 4411603, at *9 (M.D. Pa. Sept. 5, 2014); *Baldwin v. Hous. Auth. of City of Camden*, 278 F. Supp. 2d 365, 378–79 (D.N.J. 2003), Emrit does not appear to assert a procedural due process claim. Indeed, the complaint explicitly acknowledges his receipt of written notice of the LHA decision to place him on the Section 8 voucher waiting list. (Doc. 1 ¶ 17).

Emrit does appear to assert a substantive due process claim. "The core of the concept of due process is protection against arbitrary action." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006). "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400–02 (3d Cir.

2003)). The Third Circuit has held "that a violation of . . . law will constitute conscience shocking behavior when it contains 'allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggest conscience-shocking behavior.'" *Whittaker v. Cty. of Lawrence*, 437 Fed. App'x 105, 109 (3d Cir. 2011) (citations omitted). Based on the allegations of the complaint, viewed in the light most favorable to the plaintiff, Emrit has failed to allege any conscience-shocking behavior whatsoever by LHA.

Accordingly, it is recommended that Emrit's § 1983 due process claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 3. Privileges and Immunities Clause Claim

Emrit claims that LHA's failure to grant him preferential treatment has violated his rights under the privileges and immunities clause. U.S. Const. Art. IV § 2, cl. 1. This clause is intended to prevent a state from discriminating against residents of other states in favor of its own citizens. *Lutz v. City of York*, 899 F.2d 255, 262 (3d Cir. 1990); *DeFeo v. Sill*, 810 F. Supp. 648, 655 (E.D. Pa. 1993). "When a challenged restriction deprives nonresidents of a privilege or immunity protected by this Clause, it is

invalid unless (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989). Here, however, Emrit has not alleged any difference in treatment between residents and nonresidents. Rather, the complaint alleges that Emrit has been treated the same by LHA as other Section 8 applicants—he has been placed on a long waiting list along with other applicants pursuant to generally applicable policies and procedures. Emrit seeks to secure *preferential* treatment, not to remedy discrimination against him as a nonresident. "The Supreme Court has never employed the Privileges and Immunities Clause to invalidate a generally applicable law (one that does not treat different classes of persons differently), or even suggested that it might do so." *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1044 (10th Cir. 2009).

Accordingly, it is recommended that Emrit's § 1983 privileges and immunities clause claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 4. Housing and Community Development Act Claim

Emrit claims that LHA's failure to grant him preferential treatment

has violated his rights under "the Housing and Community Development Act (12 U.S.C. § 1706e)." But this particular statute was repealed almost exactly twenty-five years before Emrit filed his complaint. Housing and Community Development Act of 1974 (the "HCDA"), Pub. L. No. 93-383, § 810, 88 Stat. 633, 734–35 (codified at 12 U.S.C. § 1706e), *repealed by* 42 U.S.C. § 12839(a)(5) (effective Oct. 1, 1991). Even if this provision—which established an "Urban Homesteading Program" under which PHAs received homes repossessed by federal agencies and made these homes available to prospective homesteaders who were willing to repair and rehabilitate the homes, *see Bossert v. Springfield Grp., Inc.*, 579 F. Supp. 56, 59 (S.D. Ohio 1984)—were still effective, it is well established that the HCDA does not include a private right of action to enforce its provisions. *See Latinos Unidos de Chelsea en Accion (LUCHA) v. Sec'y of Hous. & Urban Dev.*, 799 F.2d 774, 793–94 (1st Cir. 1986).

Accordingly, it is recommended that Emrit's claim under Section 810 of the HCDA, 12 U.S.C. § 1706e, be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 5. Housing Act of 1937 Claim

Emrit claims that LHA's failure to grant him preferential treatment

has violated his rights under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f. *See generally* United States Housing Act of 1937, Pub. L. No. 7575-412, § 8, 50 Stat. 888, 891, *amended by* Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 201(a), 88 Stat. 633, 662–66 (codified at 42 U.S.C. § 1437f). But Section 8, codified at 42 U.S.C. § 1437f, "does not provide for a private right of action except for recovery of rent and utility allowances, which [Emrit] does not seek." *Chavis v. Bush*, 305 Fed. App'x 11, 12 (3d Cir. 2008) (per curiam) (affirming dismissal of claim concerning denial of Section 8 housing voucher).

Accordingly, it is recommended that Emrit's claim under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f, be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 6. Americans with Disabilities Act Claim

Emrit claims that LHA's failure to grant him preferential treatment has violated his rights under the Americans with Disabilities Act of 1990 (the "ADA").

In pertinent part, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, a program is required only "to provide *equal* access to its core services. If a program provides these core services in a non-discriminatory manner then it has provided meaningful access to its benefits and an expansion of those services is not required by statute or regulation." *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 528 F. Supp. 2d 553, 567 (E.D. Pa. 2007) (emphasis added); *see also Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("The ADA requires only that a particular service provided to some not be denied to disabled people."); *Safe Air for Everyone v. Idaho*, 469 F. Supp. 2d 884, 889–90 (D. Idaho 2006) ("[M]eaningful access does not require that the disabled receive a *greater* benefit but, instead, that the handicapped are provided equal access to the benefit offered by the state as provided to non-handicapped individuals.") (emphasis added).

Here, Emrit has not alleged any discriminatory treatment. His complaint clearly acknowledges that, notwithstanding his alleged disabilities, LHA has provided him with *equal* access to the Section 8 housing voucher program, placing him on a waiting list just like everyone

else. His grievance is based instead on LHA's failure to provide him with *greater* access to its Section 8 housing voucher service than it does to other, non-disabled applicants.

Accordingly, it is recommended that Emrit's ADA claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 7. *Fair Housing Act Claim*

Emrit claims that LHA's failure to grant him preferential treatment has violated his rights under the Fair Housing Act ("FHA").

As our sister court has summarized:

> The Fair Housing Amendments Act ("FHAA")[4] bars discrimination against disabled people in the sale or rental of housing and requires reasonable accommodations in "rules, policies, practices, or services" as necessary to allow a handicapped person to use and enjoy a dwelling. There are three types of claims that a plaintiff with a disability may bring under the FHAA: 1) intentional discrimination, or disparate treatment, claims; 2) disparate impact claims; and 3) claims that a defendant refused to make "reasonable accommodations in rules, policies, practices, or services, when such

---

[4] Congress passed the FHA in 1968 to prevent housing discrimination on the basis of, *inter alia*, race, gender, and national origin. It passed the FHAA in 1988 to extend the coverage of the FHA to include people with disabilities. *See Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

The text of the FHAA precludes discrimination in the sale or rental of a dwelling or in providing services or facilities in connection with that dwelling. Typically, this act is used to bring suits against landlords, but courts have also held that this act applies to suits against municipalities and land use authorities. Third Circuit dicta suggests that the FHAA does not apply to suits against PHAs who provide disabled persons with vouchers for housing assistance. The FHAA imposes liability on property owners, but was not "intended to impose liability on those who purchase or lease housing on behalf of handicapped persons."

*Spieth v. Bucks Cty. Hous. Auth.*, 594 F. Supp. 2d 584, 592 (E.D. Pa. 2009) (citations omitted) (citing 42 U.S.C. 3604 and quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005), and *Growth Horizons, Inc. v. Delaware Cty.*, 983 F.2d 1277, 1283 (3d Cir. 1993)); *see also Growth Horizons*, 983 F.2d at 1283 ("Nothing in the text or legislative history of § 3604(f)(1) suggests to us that Congress intended to regulate and thereby subject to judicial review the decision-making of public agencies which sponsor housing for the handicapped.").

But even assuming *arguendo* that Emrit can maintain a claim under the FHA despite the fact that LHA has not sold or rented him a dwelling, he has nevertheless failed to state such a discrimination claim in his

complaint. First, Emrit has failed to state a disparate treatment claim because he has failed to allege sufficient facts to plausibly demonstrate that "discriminatory purpose was a motivating factor behind the challenged action." *Wind Gap*, 421 F.3d at 177 (internal quotation marks omitted). Second, Emrit has failed to state a disparate impact claim because he has alleged facts specific only to his own situation, and none with respect to the impact of the challenged practice on other handicapped or non-handicapped applicants. *See Spieth*, 594 F. Supp. 2d at 593. Third, Emrit has failed to state a claim that LHA failed to make a reasonable accommodation because he has failed to allege any facts to plausibly show that "the accommodations that [he] requested are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." *Lapid-Laurell, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 459 (3d Cir. 2002).

As alleged in the complaint, Emrit was placed on a waiting list like any other Section 8 housing voucher applicant. Emrit has not alleged that LHA moved other, more recent applicants ahead of him. *See Stoessel v. Parkside Dev. Co., Inc.*, 358 F. Supp. 802, 805 (S.D.N.Y. 1973) (applicants failed to state claim under § 3604 where they were moved up waiting list

for an apartment in an orderly manner based merely on the date of their application, and no evidence was introduced that more recent applicants were moved ahead of them). Ultimately, the bottom line is that the challenged waitlist policies of LHA do not preclude Emrit from obtaining the Section 8 housing voucher he seeks because of his disability; they preclude him from obtaining it because others have a prior right to it. *See Castro v. Bayonne Hous. Auth.*, Civ. No. 10-403(DRD), 2010 WL 4853477, at *7 (D.N.J. Nov. 22, 2010).

Accordingly, it is recommended that Emrit's FHA claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 8. *State-Law Claims*

"[A] complaint may be dismissed pursuant to Rule 12(b)(6) where the defendant contends that under the facts alleged he is entitled to immunity, even though [such] immunity is generally characterized as an affirmative defense." *Frazier v. Se. Pa. Transp. Auth.*, 868 F. Supp. 757, 760 (E.D. Pa. 1994). Here, the defendants contend that Emrit's state-law claims for negligence, intentional infliction of emotional distress, and breach of contract claims are barred by statutory sovereign immunity.

By statute, Pennsylvania law provides that housing authorities are agencies of the Commonwealth, rather than municipal entities, for purposes of sovereign immunity. *See* 35 P.S. § 1550; *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 119 (3d Cir. 1993). The doctrine of sovereign immunity bars state-law damages claims against the Commonwealth and its agencies, except where specifically waived by the legislature. *See* 1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. § 8522 (specifically waiving sovereign immunity for certain categories of tort liability not implicated in this case); 62 Pa. Cons. Stat. Ann. § 1702 (specifically waiving sovereign immunity for certain types of contract dispute not implicated in this case). Thus, in this case, sovereign imunity bars Emrit's state-law claims for negligence, intentional infliction of emotional distress, and breach of contract. *See Davila v. Kozak*, Civil Action No. 13-67J, 2014 WL 904301, at *5 (W.D. Pa. Mar. 5, 2014) (simple negligence not within enumerated exceptions to sovereign immunity); *Coulter v. E. Stroudsburg Univ.*, Civil Action No. 3:10-CV-0877, 2010 WL 1780400, at *1 (M.D. Pa. May 4, 2010) (breach of contract); *Boone v. Pa. Office of Vocational Rehabilitation*, 373 F. Supp. 2d 484, 495 (M.D. Pa. 2005) (intentional infliction of emotional distress).

Accordingly, it is recommended that Emrit's state-law claims for negligence, intentional infliction of emotional distress, and breach of contract be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Based on the facts alleged in the complaint and the plaintiff's litigation history, it is apparent that amendment in this case would be futile. It is therefore recommended that the complaint be dismissed *without* leave to amend.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. The defendants' motions to dismiss (Doc. 9; Doc. 15) be **GRANTED**;

2. All claims against the U.S. Department of Housing and Urban Development be **DISMISSED** for lack of subject matter jurisdiction,

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure;

3.    All claims against Lycoming Housing Authority be **DISMISSED** for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

4.    The Clerk be directed to mark this case as **CLOSED**.

Dated: May ___*17*___, 2017

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

RONALD SATISH EMRIT,

      Plaintiff,

      v.

LYCOMING HOUSING
AUTHORITY, et al.,

      Defendants.

CIVIL ACTION NO. 4:16-cv-02022

(BRANN, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated May ___*17*___, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: May __17__, 2017

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge